## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRINCESA CANDELITA EL** | : | |
| **MITCHKEBE  KEBECHET  EL,** | : | **Civil No. 3:19-CV-2222** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Judge Caputo)** |
| | : | |
| **GOVERNOR TOM WOLF,** | : | **(Magistrate Judge Carlson)** |
| **et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    Factual Background

This case comes before us for a legally-mandated screening review of the plaintiff's *pro se* civil complaint. In conducting this review, we note that this complaint demands a great deal of the reader. The plaintiff, Princesa Candelita El Mitchkebe Kebechet El ("Kebechet"), is self-described as an "Indigenous Moorish Trinidadian America National, natural inhabitant of the land and The Majority," (Doc. 1 at 10), and a citizen of the "Pennsylvania Republic." (Id. at 1). Kebechet's complaint names a bewildering array of some 15 individual and institutional defendants, including the Commonwealth of Pennsylvania, the Governor and Secretary of Transportation, three Pennsylvania counties, numerous state court judges and court personnel, and one private person, a woman named Mabel Hinson. (Id.)

Citing the 1787 and 1836 treaties of friendship between the United States and Morocco, Kebechet then enigmatically states that she and her "fellow fallen muurs [sic] are not subjects, indians, cattle, slaves, negro, property, black nor a box of crayons to any corporation in commerce. . . ."[1] (<u>Id.</u> at 8). What then follows is a largely unintelligible narrative describing some sort of legal dispute between Kebechet and Mabel Hinson, in which Kebechet seems to allege that Hinson has made false allegations against her in state court. Thus, Kebechet appears to be suing a private person, Hinson, who has been a witness against her in some state case. Kebechet's complaint then "seek[s] all wrongs right & fair", as well as $75,000 in damages from each defendant. (<u>Id.</u>)

Along with this complaint, Kebechet filed a motion for leave to proceed *in forma pauperis*. (Doc. 2). We will provisionally grant Kebechet leave to proceed *in forma pauperis*, but for the reasons set forth below, recommend that this complaint be dismissed.

---

[1] We note that the ambiguities in Kebechet's complaint do not end with the claims therein. Specifically, we are unsure of the plaintiff's gender in this case. We gather, based on a reference in the complaint to a state trial court judge referring to the plaintiff as "ma'am," (Doc. 1 at 9), that the plaintiff is a woman. Thus, we operate under this assumption throughout this report and recommendation.

## II.    Discussion

### A.    Screening of *Pro Se* Complaints–Standard of Review

This Court has an on-going statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. See 28 U.S.C. § 1915(e)(2)(B)(ii). Thus, in this case we are obliged to review the complaint to determine whether any claims are frivolous, malicious, or fail to state a claim upon which relief may be granted. This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by

4

mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a

review of the adequacy of complaint, the Supreme Court has advised trial courts that

they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions. Rather, a complaint must recite factual

allegations sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation. As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed: "The Supreme Court in <u>Twombly</u> set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' <u>Iqbal</u>, 129 S.Ct. at 1949 (citing <u>Twombly,</u> 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' <u>Id.</u> A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " <u>Burtch v. Milberg Factors, Inc.,</u> 662 F.3d 212, 220-21 (3d Cir. 2011) <u>cert. denied</u>, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' <u>Iqbal</u>, 129 S. Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' <u>Id.</u> at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these legal guideposts, for the reasons set forth below it is recommended that this amended complaint now be dismissed.

### B.    This Complaint Fails to State a Claim Upon Which Relief May Be Granted.

In this case Kebechet's complaint run afoul of a series of insurmountable legal obstacles. Indeed, as set forth below, the complaint is fatally flawed in multiple respects.

### 1.  This Complaint Violates Rule 8.

At the outset, the complaint is subject to dismissal because it presents a cause of action that "relies on 'fantastic or delusional scenarios.' Neitzke v. Williams, 490 U.S. 319, 328, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989)." DeGrazia v. F.B.I., 316 F. App'x 172, 173 (3d Cir. 2009). Furthermore, we are obliged to

> *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) when the allegations within the complaint "are so attenuated and unsubstantial as to be absolutely devoid of merit, . . . wholly insubstantial, . . . obviously frivolous, . . . plainly unsubstantial, . . . or no longer open to

discussion." <u>Hagans v. Lavine</u>, 415 U.S. 528, 536-37, 94 S. Ct. 1372,
39 L.Ed.2d 577 (1974) (internal citations and quotation marks omitted).
There is no question that [these] claims meet this standard, as they rely
on fantastic scenarios lacking any arguable factual basis.

<u>DeGrazia v. F.B.I.</u>, 316 F. App'x 172, 173 (3d Cir. 2009). To the extent that
Kebechet's complaint rests upon her idiosyncratic views concerning her status as an
"Indigenous Moorish Trinidadian America National, natural inhabitant of the land
and The Majority," (Doc. 1 at 10), and a citizen of the "Pennsylvania Republic," (<u>Id.</u>
at 1), while purporting to assert claims based upon 18th and 19th century treaties
between Morocco and the United States, these allegations are so attenuated and
unsubstantial as to be absolutely devoid of merit.

In addition, the complaint fails to comply with Rule 8's basic injunction that:
"A pleading that states a claim for relief must contain . . . *a short and plain statement
of the claim* showing that the pleader is entitled to relief." Dismissal of this complaint
is appropriate since it is well-settled that: "[t]he Federal Rules of Civil Procedure
require that a complaint contain 'a short and plain statement of the claim showing
that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment
be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." <u>Scibelli v. Lebanon County</u>, 219 F.
App'x 221, 222 (3d Cir. 2007). Thus, when a complaint is "illegible or
incomprehensible", <u>id.</u>, or when a complaint "is also largely unintelligible,"
<u>Stephanatos v. Cohen</u>, 236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a
complaint under Rule 8 is clearly appropriate. <u>See, e.g.</u>, <u>Mincy v. Klem</u>, 303 F.

8

App'x 106 (3d Cir. 2008); <u>Rhett v. New Jersey State Superior Court</u>, 260 F. App'x 513 (3d Cir. 2008); <u>Stephanatos v. Cohen</u>, <u>supra</u>; <u>Scibelli v. Lebanon County</u>, <u>supra</u>; <u>Bennett-Nelson v. La. Bd. of Regents</u>, 431 F.3d 448, 450 n.1 (5th Cir. 2005). Furthermore, dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action];" <u>Binsack v. Lackawanna County Prison</u>, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. <u>Tillio v. Spiess</u>, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011). Finally, a complaint may be dismissed under Rule 8 when the pleading is simply illegible and cannot be understood. <u>See, e.g.</u>, <u>Moss v. United States</u>, 329 F. App'x 335 (3d Cir. 2009) (dismissing illegible complaint); <u>Radin v. Jersey City Medical Center</u>, 375 F. App'x 205 (3d Cir. 2010); <u>Earnest v. Ling</u>, 140 F. App'x 431 (3d Cir. 2005) (dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); <u>Oneal v. U.S. Fed. Prob.</u>, CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006) (dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); <u>Gearhart v. City of Philadelphia Police</u>, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) (dismissing illegible complaint).

Here, Kebechet's complaint simply cannot be understood. Since intelligibility is a prerequisite for any pleading, this complaint fails as a matter of law on these grounds. Furthermore, the complaint does not "contain 'a short and plain statement

of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and [fails to meet Rule 8's requirement] that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." <u>Scibelli v. Lebanon County</u>, 219 F. App'x 221, 222 (3d Cir. 2007). Simply put, the absence of well-pleaded facts makes it virtually impossible to ascertain the legal and actual significance of Kebechet's allegations. Thus, we are "left . . . having to guess what of the many things discussed constituted [a cause of action]." <u>Binsack v. Lackawanna County Prison</u>, 438 F. App'x 158 (3d Cir. 2011). In such instances, Rule 8 calls for the dismissal of the complaint.

## 2. <u>Kebechet May Not Sue the State and State Officials</u>

Further, in its current form, Kebechet's complaint fails to state damages claims upon which relief may be granted against the state agencies and officials named in the pleading. Dismissal of Kebechet's claims against these institutional and individual state defendants is warranted because this *pro se* complaint runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials.

First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . ." U.S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by

citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies, and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 54 (1996). Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. In this case, it is apparent that Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against these state agencies and the Commonwealth clearly has not waived its immunity. <u>See Lavia v. Pennsylvania, Dept. of Corr.</u>, 224 F.3d 190, 195 (3d Cir. 2000); <u>Foster v. Pennsylvania Human Relations Comm'n.</u>, 157 F. App'x 488, 490 (3d Cir. 2005) (holding that the District Court's finding of immunity for the PHRC and the PDLI was proper, as they were all clearly state agencies). Quite the contrary, the Commonwealth has specifically invoked its Eleventh Amendment immunity under 42 Pa.C.S. § 8521(b). Thus, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, <u>see</u> 42 Pa.C.S. § 8522, section 8521(b) flatly states that: "Nothing contained

in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa.C.S. § 8521(b).

Moreover, beyond these constitutional considerations, as a matter of statutory interpretation, the plaintiff cannot bring a damages action against the Commonwealth since it is also well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. § 1983, the principal federal civil rights statute. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

These basic legal tenets apply here and are fatal to the plaintiff's damages claims against these state defendants. In sum, as to these state agencies and officials, these federal civil rights claims for damages are barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute, 42 U.S.C. § 1983. Therefore, since the state and its officials cannot be sued in this fashion in federal court, these claims should be dismissed. Parks v. SCI Camp Hill, No. 1:19-CV-109, 2019 WL 1303203, at *3–4 (M.D. Pa. Feb. 11, 2019), report and recommendation adopted, No. 1:19-CV-0109, 2019 WL 1298996 (M.D. Pa. Mar. 21, 2019).

### 3.  __Kebechet's Institutional Liability Claims Against Various Counties Fail as a Matter of Law.__

Kebechet's *pro se* complaint also attempts to bring institutional civil rights claims against three counties. To the extent that Kebechet seeks to hold these institutional defendants liable for alleged civil rights violations, she must meet an exacting burden of pleading and proof. It is well-settled that local governmental entities may not be held liable under § 1983 for the acts of others under a theory of *respondeat superior* or vicarious liability. Ashcroft v. Iqbal, 556 U.S. 662 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). Instead, such an agency may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Thus, to sustain a claim against this institutional defendant, a plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." Id. at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d

13

1469, 1480 (3d Cir. 1990) (citations omitted). The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404). A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .' " Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the " 'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.' " Id. at 325 (citations omitted). Therefore, analysis of a claim under Monell requires separate analysis of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

An institutional defendant may also be liable for constitutional violations resulting from inadequate training or supervision of its employees if the failure to train amounts to a custom of the municipality. However, failure-to-train claims also must meet precise and demanding legal criteria. Such a failure must "amount[] to deliberate indifference to the constitutional rights of persons with whom the police come in contact." Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Proving agency liability on a theory of deliberate indifference

is an especially difficult showing for a plaintiff to satisfy where the plaintiff has alleged that insufficient training or supervision has caused constitutional violations. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). Such a showing requires that "(1) . . . lawmakers know that employees will confront a similar situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999). Moreover, the plaintiff proceeding on such a theory must establish that the agency's "deliberate conduct . . . was the 'moving force' behind the injury alleged." Reitz, 125 F.3d at 145 (quoting Brown, 520 U.S. at 404). Therefore, the need for training, supervision, or other corrective action to avoid imminent deprivations of a constitutional right "must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." Horton v. City of Harrisburg, No. 06-2338, 2009 U.S. Dist. LEXIS 63428, *13 (M.D. Pa. July 23, 2009) (quoting Strauss v. Walsh, No. Civ. A. 01-3625, 2002 U.S. Dist. LEXIS 24717, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002)). Additionally, in order to recover for municipal liability on a failure-to-train theory, the alleged failure must be "closely related to the ultimate (constitutional) injury." Woloszyn, 396 F.3d at 325.

The Supreme Court has reaffirmed the exacting guiding principles which define institutional civil rights liability based upon a failure to train or oversee law enforcement officers. In <u>Connick v. Thompson</u>, – U.S.– , 131 S. Ct. 1350, 1359 (2011), the Court described the parameters of agency liability in the following terms:

> A municipality or other local government may be liable . . . if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. <u>See</u> <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 692 (1978). But, under § 1983, local governments are responsible only for "their own illegal acts." <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479 (1986). . . . . They are not vicariously liable under § 1983 for their employees' actions. . . . . Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. <u>Monell</u>, 436 U.S., at 691. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. . . . . These are "action[s] for which the municipality is actually responsible." <u>Pembaur</u>, <u>supra</u>, at 479–480. In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. <u>See Oklahoma City v. Tuttle</u>, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in <u>Monell</u>"). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." . . . . Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. . . . . " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . . Thus, when city policymakers are on actual or constructive

notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

Id. (some citations deleted).

Here, this complaint simply does not make sufficient allegations which would permit a finding of institutional liability against any of the counties named in this pleading. With respect to these institutional liability claims, in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. Fairly construed, these pleadings fail to even present a formulaic recitation of the elements of a cause of action, a form of pleading that will not do. Therefore, Kebechet's claims against this institutional defendant also fail as a matter of law.

### 4. The Judges and Court Personnel Named by Kebechet as Defendants are Immune from Civil Liability.

Further, Kebechet's *pro se* complaint fails to state a claim against the numerous state judges and courthouse staff named as defendants in this action. Liberally construed, this *pro se* complaint seeks to hold a host of state court judges personally liable for alleged civil rights violations arising out of the performance of

17

judicial acts. To the extent that this complaint seeks to hold any judge personally liable for civil rights violations, based upon an alleged failure to act favorably in ruling upon other litigation, it is well-settled that such officials are individually cloaked with immunity from liability. The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991), prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976), and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d. Cir. 1986) (parole board adjudicators), are entitled to immunity from personal liability for actions they take in our adversarial system of justice. These longstanding common law immunities apply here and prevent Kebechet from maintaining this civil action against any state judges named in this complaint since these judges are entitled to judicial immunity for their actions in these state proceedings and are absolutely immune from personal liability for any judicial acts. See, e.g., Arsad v. Means, 365 F. App'x 327 (3d Cir. 2010); Figueroa v. Blackburn, 208 F.3d 435 (3d Cir. 2000). As we have explained when rejecting a similar efforts to impose personal civil rights liability on a judge, this immunity is both broad and absolute:

"It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.' " Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir. 2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S. Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)). "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." Id. (citations omitted). Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," Stump v. Sparkman, 435 U.S. 349, 359, 98 S. Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" Goldhaber v. Higgins, 576 F. Supp. 2d 694, 703 (W.D. Pa. 2007). Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010), aff'd, 447 F. App'x 397 (3d Cir. 2011); Kwasnik v. Leblon, 228 F. App'x 238, 243 (3d Cir. 2007) ("A judicial officer in the performance of his or her duties has absolute immunity from suit. Mireles v. Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ).

The scope of these protections extend beyond judges to those court personnel named in the complaint, who take discretionary actions at the direction of the courts. As this court has observed:

> Quasi-judicial officers, who act in accordance with their duties or at the direction of a judicial officer, also are immune from suit. See Gallas, 211 F.3d at 772-73 (court administrator entitled to immunity for release of information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969) (holding that prothonotary, acting under court direction, was immune from suit). The doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir.1992). See also Johnson v. Kegans, 870 F.2d 992, 995 (5th Cir.1989) ("Prosecutors and other necessary participants in the judicial process enjoy quasi-judicial immunity as well.").Quasi-judicial absolute immunity is available to those individuals, . . . who perform functions closely associated with the judicial process. Marcedes v. Barrett, 453 F.2d 391 (3d Cir.1971) (holding that quasi-judicial immunity applied to clerk of courts, an administrative assistant to the president judge and a court reporter); Henig v. Odorioso, 385 F.2d 491, 494 (3d Cir.1967) (holding that judiciary employees executing judicial orders are immune from suit); Davis v. Philadelphia County, 195 F.Supp.2d 686 (E.D.Pa.2002) (holding that quasi-judicial immunity applies to court staff, such as clerks of judicial records and court reporters).

Stout v. Naus, 09-390, 2009 WL 1794989, at 3 (M.D. Pa. 2009)(McClure, J.).

These longstanding common law immunities for judicial and quasi-judicial officials directly apply here and prevent the plaintiff from maintaining this civil action for damages against the individual judges and courthouse staff named as defendants in his complaint. In short, since these judges and courthouse personnel

are immune from liability for the performance of their judicial and quasi-judicial roles, the plaintiff simply may not maintain an action against any of these defendants, and these claims must all be dismissed.

### 5. Kebechet May Not Bring a Civil Rights Claim Against a Private Person for Her Role as a Witness in Some Proceeding.

Kebechet's complaint also appears to bring a claim against a private person, Mabel Hinson, who has alleged in some state proceedings that Kebechet threatened her. Thus, Kebechet is apparently attempting to bring a federal civil rights actions against a private person for testifying against her in state court.

This she cannot do. Indeed, this claim fails for at least two reasons. First, it is well-established that § 1983 does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise guaranteed under the Constitution and laws of the United States. Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well-settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: *(1) whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right. <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981).

<u>Boykin v. Bloomsburg University of Pennsylvania</u>, 893 F. Supp. 409, 416 (M.D. Pa. 1995), <u>aff'd</u>, 91 F3d 122 (3d Cir. 1996) (emphasis added). Thus, it is essential to any civil rights claim brought under § 1983 that the plaintiff allege and prove that the defendant was acting under color of law when that defendant allegedly violated the Plaintiff's rights. Therefore, to the extent that a complaint seeks to hold a private party liable for alleged civil rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983 since the statute typically requires a showing that the defendants are state actors. <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999).

Moreover, to the extent that Kebechet premises the liability of Ms. Hinson upon her status as a witness in the plaintiff's state case, it is also well-settled that under § 1983 a

> witness has absolute immunity with respect to *any* claim based on the witness' testimony. When a witness is sued because of . . . testimony, the [Supreme] Court [has written], "the claims of the individual must yield to the dictates of public policy." . . . . Without absolute immunity for witnesses, the court concluded, the truth-seeking process at trial would be impaired. Witnesses "might be reluctant to come forward to testify," and even if a witness took the stand, the witness "might be inclined to shade his testimony in favor of the potential plaintiff" for "fear of subsequent liability."

Rehberg v. Paulk, – U.S. –, 132 S. Ct. 1497, 1505, 182 L.Ed.2d 593 (2012). Since this witness is immune from civil liability for her act of testifying, Kebechet's efforts to sue this witness must be rejected.

In sum, our screening review of this complaint calls to mind Shakespeare's observation in *Othello*, since in this case we find that there is "no hinge nor loop to hang a [claim] on" for Kebechet. *Othello,* ACT III, Scene 3. See Ali v. Tucker, No. 2:12-CV-7160, 2013 WL 1858785, at *11 (E.D. Pa. Apr. 10, 2013), report and recommendation adopted, No. 1:12-CV-7160, 2013 WL 1858776 (E.D. Pa. May 2, 2013). Therefore, this complaint should be dismissed. Finally, while we are mindful that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, Kebechet's complaint is profoundly flawed in multiple ways which are not subject to correction through more artful pleading. Therefore, in our view, granting leave to further amend this pleading would be futile and would result in further undue delay. Accordingly, we recommend that this complaint be dismissed without leave to amend.

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, the plaintiff's request to proceed *in forma pauperis* is provisionally GRANTED, (Doc 2), but IT IS FURTHER RECOMMENDED that the plaintiff's complaint be dismissed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3rd day of January 2020.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge